The case of the day is United States v. Elliott. Ms. Christensen. Good morning, Your Honors. May it please the Court. My name is Joanna Christensen, and I represent Mr. Elliott in this matter. Mr. Elliott's Sixth Amendment right to conflict-free counsel was violated when the District Court failed to obtain a valid waiver of the conflict of interest his attorney suffered under. What is the conflict of interest, do you presume? The conflict of interest stems from the allegations sample made against Mr. Elliott regarding smuggling drugs into the jail. Mr. Sample was worried that Elliott had wanted him to commit a crime, but what is the conflict of interest? You seem to think that conflict of interest is anything that might go wrong in an attorney-client relationship, and obviously that's not true. No. It's not as if Sample had loyalties to some third party or a reason to pull his punches in the defense. Yes, I believe it's a combination because he did have loyalties to the people who were paying his bills on behalf of Mr. Elliott, and there's a combination there because it's all interrelated, is that all of this becomes a division of loyalty for Sample, and his inability to perform as Mr. Elliott's lawyer and only Mr. Elliott's lawyer is compounded by the fact that he was worried about his safety, he was worried about his ethical responsibilities, his exposure to misconduct himself, and of course paying his legal fees. I just don't get it. There may or may not be problems. We don't have to call them all by the name conflict. If a lawyer thinks his client has asked him to suborn perjury by presenting perjured testimony, for example, that's an ethical problem, but we don't call it a conflict of interest. We talk about the problem for what it is. I just wonder why you're trying to shoehorn this problem into the phrase conflict of interest. Because it isn't a conflict. A combination of it is a conflict, and not all problems are conflicts. I'm willing to concede that, but in this case, there was a conflict here, and the district court failed to address it with Mr. Elliott, so Mr. Elliott did say, hey, I want Sample to stay on. He's a great lawyer. He's done this for me. All of that was said within this world where Mr. Elliott did not know that the conflict existed and the things that Sample was alleging Mr. Elliott had done. Now, I'll just address the appeal waiver briefly. This issue can't survive the appeal waiver because it goes to the heart of the voluntariness of the plea, and we're arguing first and foremost it should be an automatic reversal because there was a conflict under Holloway that the district court did not address and forced Sample to continue representing Mr. Elliott. I recognize that Mickens, the Supreme Court in Mickens, called Holloway a very narrow decision. However, Mickens noted that Holloway has a place where the Strickland analysis is not enough to prevent the denial of the Sixth Amendment right. So automatic reversal also would be appropriate under chronic, under the third type of chronic issue, which would prevent any lawyer from rendering effective assistance. And in this case, as I've already discussed, those factors would be very difficult for Sample, and in fact were very difficult for Sample to continue representing Mr. Elliott. Let me ask you about that. The government paints chronic as about denial of counsel altogether. You highlight chronic's language about do we have a situation that would prevent a lawyer from providing competent representation. So there's a mismatch with how you all paint chronic and its application to the case. Can you address that and why your view and your view is the right view? Sure. Chronic discusses the circumstances or prejudice that amounts to a complete denial of counsel. That's the basic holding of chronic, but it gives circumstances, right? And one of those would be, of course, where there's no attorney whatsoever. And that's obviously not the case here. And then there are two other examples that the court gives. One is that the attorney didn't subject the case to any adversarial testing. And then the third is that circumstances that are likely to prevent any lawyer from rendering effective assistance. And that is the third situation that we're going under. Obviously, he had his attorney, and to the extent that it is done in plea proceedings, he negotiated with the government, which is really the best can be done. But any lawyer in this circumstance would have a difficult time continuing to represent a defendant. Let me ask you another question about the appeal waiver. You say that the conflict here goes to the voluntariness of the plea. Is it fair to say that the presence of a conflict here goes to ineffective assistance of counsel, which is carved out of the appeal waiver? Is that a fair way to look at it? Because if you've got a client, I mean, a lawyer laboring under a conflict, you cannot then have effective assistance of counsel. And so it doesn't become an IAC claim that we're then saying should be dealt with on collateral review. It is, as both of you seem to agree, an issue about a district court's error. But it's an error rooted in effective assistance of counsel. Give me your thoughts on that. I think, and this may be splitting hairs as to the wording that we're using, I'm not making an effective assistance of counsel argument. And the reason for that is that even though the appeal waiver allows for it, the Strickland type of analysis is better done on 2255. The questions asked are different. But the Mickens case allows for this remedy that addresses cases that are outside of Strickland, that don't apply to the Strickland analysis. And even if you get beyond automatic reversal to Kyler versus Sullivan, that doesn't ask about prejudice to the defendant. That asks about potential adverse effects. So the language is very different in the way that we talk about it. It may come down to the same concept of ineffective assistance. It comes from a different direction. But I guess I'm not saying that you're making, because it's clear to me that you are not making an ineffective assistance of counsel claim. But the question is merely about why this doesn't fall within the appeal waiver. If the appeal waiver says if it's got anything to do with ineffective counsel, you can appeal it. This has to do with ineffective counsel by my reading of your argument, because it's about counsel having a conflict. That doesn't mean your claim is ineffective assistance of counsel. I see what you're asking. And that entirely could be the exception that's carved out. My understanding is that those appeal waivers that contain the exception for ineffective assistance of counsel really are addressing the Strickland ineffectiveness. And how do we know that here? Is it just this language that's in the plea that I'm looking at? I think that's what we've got in this case about it. I mean, it certainly wasn't discussed on the record. For me and my analysis, it's that that is usually interpreted as a Strickland type of error prejudice analysis. But is that just custom? Your analysis is custom? Or is it based on some sort of case law that says when you see these black and white words in the plea agreement, it must only be talking about a pure Strickland claim? I don't think I have a case that says that. I think it is based on practice and also my knowledge that that didn't used to be an exception in appeal waivers, that you waived everything, including effective assistance or ineffective assistance of counsel, and the fact that it's now become essentially a Strickland analysis for 2255. I have, in other cases, made arguments about that section of the appeal waiver under Strickland, and it said, no, you do this on 2255, or you should have. So unless the court has questions, I have just a minute left in my time, and I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Christensen. Mr. Reitz. May it please the court, Brian Reitz for the United States. We agree with the court that this was a problematic attorney-client relationship, but not a conflicted one. We think our brief is sufficient to show why there is no actual conflict and no adverse effect. With that, I want to jump right in. Judge Jackson-Equilumi, you asked two questions that I want to address. First, about Cronick. We agree that Cronick said there's a third factor, possibly, where no attorney could effectively represent the client. This is not that case. In fact, samples representation of Mr. Elliott shows that any attorney, and in fact the attorney that has the purported conflict here, could effectively represent Mr. Elliott. Mr. Sample's representation after this purported conflict was effective. Well, that's kind of weird, because that is looking at what happened later to then go back in time, at the time that Sample initially raises the conflict, and say, see, there was no problem. You couldn't possibly have been as hot and bothered as you were the day you told the court you needed to withdraw. Oh, I agree that Mr. Sample was hot and bothered the day he wanted to withdraw. Nothing of our argument is about that. Well, you just argue that because we later see that he got through to sentencing, everything was fine. Yeah, I think it proves that it was. In addition to the fact that there was no actual conflict. Nothing he said that day indicated that there was an actual conflict. I mean, certainly he said there was a reconcilable conflict, but he didn't identify any fact that would place him in a position where he had incompatible interests. Well, I am a little concerned about that, too, because what we have is Mr. Sample saying, not just that Mr. Elliott tried to use me to commit a crime. There's already a crime there. As you know, attempt crimes are crimes. Correct. The crime was completed, attempted possession with the intent to distribute. Yes. Then we also have Sample saying, I actually had in my hands the legal pad with the 21 strips of drugs on it. And I took it. I locked it up. So now we have Sample explaining to the judge that he's in possession of drugs, or at least he was on that day. We don't know where the drugs are now. Sample hasn't said. He's been careful not to say. He's trying to obviously protect his exposure. So we have Sample now in possession of drugs, either still to this day at the moment he's talking to the judge, but at least the day he visited the jail. You know, we also have the fact that we don't know. Somebody sent those drugs. So we don't know if the person who sent the drugs is now looking for the drugs, because the drugs never made it to Elliott. Sample doesn't know that either. Who's looking for them? Now that the drugs are missing, and we know that drug suppliers like to know where their product is. Okay, so now the product is poof. It's disappeared. Sample doesn't know who's looking for him. And his client is a bit unhinged because he's not just a random client sitting in jail. He's one sitting in jail for murder for hire, okay, who has also incidentally asked Sample's firm about smuggling drugs into prison. So this constellation of facts is certainly disturbing and certainly takes, I think, Sample's request to the court out of a theoretical, I'm concerned there, I worry there's a problem. It elevates that beyond, I see several concrete problems, not a worry that there's a hypothetical problem. Are you saying that we should ignore those facts? I think under this court's precedence, the only thing that makes this an actual conflict is if Sample was involved or the authorities thought that he was involved in the actual crime. And nobody thinks that here. He said that he was not, so courts presume that attorneys speak truthfully to them. Nothing indicates that he was. He hasn't been charged. I can say that we don't know where the drugs are because we weren't investigating it. The only thing that makes this an actual conflict under this court's precedent is if Sample himself was involved in the crime. But Sample doesn't know that the day he's moved to withdraw. He's moved to withdraw shortly after this happens. Sample does know that he's not. No, I disagree with that. Sample said, I did not, I stopped this attempt. I'm not involved in this crime. So I respectfully disagree. He knew that he was not involved in the crime, and the court was allowed to rely on that assertion. But he also knows that he was or is still in possession of drugs. Yes. Okay, okay. Now, and the language you're referring to, are you referring to our standards set forth in Montana? Montana, and there's a number of cases. Okay, so it talks about an attorney being implicated in the crime. But have we defined what that means and who gets to judge? What is implicated and who's judging what's implicated? I suppose it's an objective general standard, and implicated means he did some act that is a crime or he is under investigation. All these cases, when someone is under investigation, there is facts in the record that the attorney was under investigation or it maybe was so obvious that he would be under investigation. So the day he moves to withdraw, he hasn't heard from anybody that he's under investigation. But later, if he hears a week later he's under investigation, he gets to come back? Yes. And then he's implicated, and then there's an actual conflict. Then it's different if there's a fear of retaliation. Yes, absolutely. And we leave that to attorneys because attorneys are best positioned to know if they have an actual conflict. So yes, the situation could have changed. Now, why isn't sample telling the court, I'm concerned about my safety, the safety of my firm, and you ought to secure the courtroom and make sure all security measures are in place? Why is that not sample reflecting a fear of retaliation? Fear of retaliation is specific to the government prosecuting him, because that places him in a choice where maybe he pulls his punches because he doesn't want to get prosecuted. Fear of retaliation from a client is not an actual conflict. I mean, it's one of the reasons of many, I suppose, that I wouldn't want to be a defense attorney, but defense attorneys are sometimes afraid of their clients. That is a problem. It's not a conflict. The safety aspect is not a conflict. I'm aware of no case, and certainly no case has been cited by Mr. Elliott, where a fear of a client is an actual conflict. That is part of the difficult job that I don't envy that defense attorneys often have to do. Well, I'm a little bit concerned about his language because it seems to me his language is not restricted to fear of Mr. Elliott, but now we know other people are involved. Who's supplying these drugs? Who is Elliott working with? And as I mentioned before, who may be looking for these drugs that have now gone missing? Your Honor, I think that is a decent inquiry for a 2255 hearing. But this record right now, we don't have it, and Mr. Elliott has the avenue in a post-conviction motion to discover those things. We don't think whatever that is rises to an actual conflict unless there is some evidence that Mr. Sample was involved, which there isn't, and he disclaimed involvement, but until we can show that or he did something that he's actually afraid that he might get prosecuted for, we are outside of actual conflict under this court's precedence. I mean, I cited my brief precedence from many circuits. With that, Your Honor, I also asked about what Mr. Elliott's claim is. So yes, he can raise a guilty plea involuntary in his claim. Yes, he can raise an ineffective assistance to counsel claim. His conflict claim is an ineffective assistance to counsel claim, so it is thereby not waived. We agree with that. However, everything is subsidiary to that. His complaints about the court, any issue he has with the court, all depends on whether there was an actual conflict, and that is an ineffective assistance of counsel analysis. So the court here to find that the district court below error or that Mr. Elliott's guilty plea was involuntary or unknowing would have to engage in the conflict analysis, which is an ineffective assistance of counsel analysis. The court has said in Stoya and Kosha that Strickland and Cole Culler v. Sullivan are two ways to show a deprivation of the Sixth Amendment right. So Mr. Elliott cannot win his case here without proving a form of ineffective assistance to counsel, which he might do on 2255, but he has not here because he has not shown an actual conflict. We talk a lot about an actual conflict. Even if Your Honor is worried that this was a conflict, there has been no showing that there was an adverse effect on Mr. Sample's representation. And with that, I actually do want to clarify one point in the reply brief. Mr. Elliott says that the two guilty pleas were exact, I think is the quote from the brief. That is incorrect. Correct. So the plea offer that Mr. Elliott declined first. Actually, instead of addressing that because that much is clear, can you go back to adverse effect and your theory on why there is no adverse effect simply because he pled and the government is saying pleading was the right thing to do here and the best thing to do here? Does the analysis end right there, I'm asking? We certainly have case law that suggests that could be the analysis. I think in this case, yes. I don't want to disclaim the ability on 2255 of Mr. Elliott to show some more specific action that Mr. Sample could have taken but didn't because of the purported actual conflict. But here on appeal, Mr. Elliott's only argument seems to be that Mr. Sample wanted to rush a guilty plea, and the record does not support that, and the guilty plea was objectively a reasonable thing to agree to, and it was beneficial to Mr. Elliott. He, in fact, went so far as to thank the prosecutor at the sentencing hearing for withdrawing the sex crime so he didn't have to register as a sex offender. So I think on the argument raised here, it is sufficient, but this can be developed in a 2255 hearing. If there are no further questions. Thank you, counsel. Thank you. Anything further, Ms. Christiansen? Yes, Your Honor. I think first and foremost, it's a little hard to know exactly where to start, but first and foremost, Sample was involved. He walked those strips in a legal pad into the jail. Now, he claims he didn't know they were in there. He had a suspicion and then later went back to his car and apparently found out. But blind mule cases are still felons, and if any defendant gave us that story, oh, well, I didn't know it was in there and then I thought about it and I'd still be guilty of attempt. So we are not arguing that Sample wanted to rush the guilty plea. We're arguing that Sample wanted a guilty plea because of this exact situation, that it would insulate him from the conflict issue being considered on direct appeal where it has a far greater chance than the less than 1% chance that he would have on a 2255 raising ineffective assistance of counsel. I need you to address adverse effect. Yes. So the adverse effect is that advising to plead guilty and how that happened because nothing was done aside from a competency exam, which was the second. I think we all agreed that Mr. Elliott was mentally ill, and it was still almost a year between the conflict hearing and the guilty plea hearing. The fact that Sample's telling the court that Mr. Elliott is continuing to commit crimes, trying to use him to commit crimes, is an adverse effect that would have happened certainly to the court, to the court's evaluation of this case. And then we cannot ignore the cross-examination issue with the mother and grandfather in this case. That was a significant adverse effect that Sample would have wanted to avoid. So I see that I'm out of time. I would ask this court to reverse and remand. Thank you. Thank you, Ms. Christensen. The case is taken under advisement.